## 30829. THE STATE v. GAITHER et al.

UNDERCOFLER, Presiding Justice.

This appeal is from the ruling of the Criminal Court of Fulton County which held that Code § 26-2012 (Ga. L. 1968, pp. 1249, 1301) is unconstitutional as enforced in the City of Atlanta, Fulton County, Georgia, because it systematically, wilfully and intentionally is enforced only against females and is a denial of equal protection.

Code § 26-2012 provides: "A person commits prostitution when he performs or offers or consents to perform an act of sexual intercourse for money."

1. The trial court found that from the evidence presented the Atlanta Police Department as a matter of policy applies the statute only against female "sellers" and that it was not enforced against male "buyers." The statute is applicable only to "sellers" of sexual intercourse for money. As stated in the Criminal Law Study Committee's notes on the offense of prostitution, "The offense is defined in terms of commercialization: the sale, offer to sell, or consent to sell physical intimacies for money."

2. The evidence shows that the Atlanta Police Department receives many complaints about female prostitutes but does not receive complaints about male prostitutes. Therefore, the conclusion reached by the trial court that the statute and its application in the City of Atlanta denies equal protection to female prostitutes must be reversed.

3. The other attacks raised by the motion to dismiss were specifically not ruled on by the trial court and cannot be considered here.

*Judgment reversed. All the Justices concur, except Jordan, Hall and Hill, JJ., who concur specially.*

SUBMITTED FEBRUARY 16, 1976 — DECIDED MARCH 16, 1976.

*Hinson McAuliffe, Solicitor, Charles Hadaway, Assistant Solicitor,* for appellant.
*Margie Pitts Hames,* for appellees.

HALL, Justice, concurring specially.

1. I agree that the prostitution statute was drawn to apply only to the seller and not the buyer. It does not violate equal protection guarantees for the legislature to criminalize the conduct of the seller but not the buyer of commercialized sex; the enforcement scheme is similar to that typically applied in liquor and drug statutes. The proper equal protection test is not "strict scrutiny" as urged by appellees, but the rational relation test which applies to economic regulations. E.g., *Wilder v. State,* 232 Ga. 404, 406 (207 SE2d 38) (1974).

Nor is prostitution protected by the somewhat amorphous constitutional right of privacy. No court to my knowledge has recognized a "right" to commit prostitution as a fundamental right which is implicit in the concept of ordered liberty, as required by Roe v. Wade, 410 U. S. 113 (93 SC 705, 35 LE2d 147) (1973) to invoke the constitutional privacy protection. Because prostitution does not meet that test, there is no need for the state to show that its regulation of prostitution is necessary to serve a compelling state interest. Id. What we have here is not an issue of personal sexual privacy, but an issue of commerce in sex analogous to the pornographic movies condemned in Paris Adult Theatre I v. Slaton, 413 U. S. 49 (93 SC 2628, 37 LE2d 446) (1973). That decision established that when the regulation of an economic enterprise is attempted, and a claim of privacy is made, the state legislature is allowed to conclude that prohibitions serve valid legislative ends. I conclude that under the rationale of that decision, prohibition of prostitution is a permissible economic-criminal regulation, and not an impermissible encroachment upon constitutional privacy concepts.

Finally, it is true that the mere agreement to commit sexual intercourse for money violates the statute; but this abridges no First Amendment freedoms. The "speech" which is prohibited by this statute constitutes a

commercial criminal agreement; it is not the dissemination of factual matters of public interest which the Supreme Court, in Bigelow v. Virginia, No. 73-1309, 43 USLW 4735 (June 16, 1975), held survived efforts to prohibit it as mere commercial speech.

2. As we construe the statute, however, it applies to all sellers of sexual intercourse, whether male or female. Appellees claim the statute is discriminatorily enforced against only female prostitutes. The court cannot, however, merely assume that males engage in prostitution in the same or similar numbers that police records and testimony showed that females did. Nothing in the record established the incidence of male prostitution, either by numbers or proportions or percentages. (I refer to males selling normal sexual favors to female buyers. The record indicated that men who offered to sell homosexual sex acts were charged under the solicitation of sodomy statute, Code Ann. § 26-2003.) Consequently, the clear fact which emerges from this record, that males are rarely if ever prosecuted for prostitution whereas females are prosecuted in great numbers, cannot be proof of discriminatory enforcement when there is no evidence in the record that male prostitutes exist in detectable numbers.

Appellees' main claim on this point was that the police department chose to shut its eyes to the existence of male prostitutes. The evidentiary weakness of their case lay in the fact that to prove discriminatory enforcement they relied upon the data accumulated by the very police department which was alleged to take — and which apparently did take — virtually no notice of male prostitution. That data does not even show the existence of male prostitution. Therefore, appellees' equal protection argument fails because they have failed to show the existence of the class — male prostitutes — claimed to be unjustly favored by discriminatory enforcement.

I am authorized to state that Justice Hill joins in this concurrence.