## 37718. FLUKER v. THE STATE.
## 37719. TURNER v. THE STATE.

MARSHALL, Justice.

Each appellant was charged with pandering, by soliciting a named female to perform an act of prostitution. Both appellants filed motions to dismiss the accusations on the grounds that they charged them with conduct that does not come within the scope of the pandering statute, and that the pandering statute violates the equal protection clauses of the United States and Georgia Constitutions, Code Ann. §§ 1-815 and 2-203. Their briefs in support of their motions stated that each appellant had offered money to a female for a sexual act to be performed *with him,* which female was, unbeknown to him, an undercover police officer.

The trial judge certified for immediate review his overruling of the appellants' motions to dismiss, and this court granted their applications for interlocutory appeals. We affirm.

1. Our pandering statute, Code Ann. § 26-2016 (Ga. L. 1968, pp. 1249, 1302; 1970, pp. 236, 238) provides: "A person commits pandering when he solicits a female to perform an act of prostitution, or when he knowingly assembles females at a fixed place for the purpose of being solicited by others to perform an act of prostitution."

The appellants argue that, since there is no statutory penalty in Georgia for the act of a female soliciting a male to engage in sexual activity with her for a fee, the pandering statute — by making illegal

the conduct of a male buyer of commercialized sex from a female — is an unconstitutional denial of equal protection. They contend that the gender-based statutes that have been upheld (see, e.g., *Perini v. State,* 245 Ga. 160 (1) (264 SE2d 172) (1980); *Barnes v. State,* 244 Ga. 302 (1) (260 SE2d 40) (1979); *Lamar v. State,* 243 Ga. 401 (254 SE2d 353) (1979)) are predicated upon biological and physiological differences between the sexes, whereas the pandering statute is allegedly based upon the outmoded beliefs that males are more sexually aggressive and that females are more embarrassed by sexual advances. Hence, it is claimed, this gender classification rests only upon "old notions," "archaic and overbroad" generalizations, and "the baggage of sexual stereotypes," prohibited by cases exemplified by Michael M. v. Superior Court of Sonoma County, —— U. S. —— (101 SC 1200, 67 LE2d 437) (1981) (statutory rape); Orr v. Orr, 440 U. S. 268 (99 SC 1102, 59 LE2d 306) (1979); Califano v. Goldfarb, 430 U. S. 199 (97 SC 1021, 51 LE2d 270) (1977).

"Underlying these decisions is the principle that a legislature may not 'make overbroad generalizations based on sex which are entirely unrelated to any differences between men and women or which demean the ability or social status of the affected class.' [Cit.] But because the Equal Protection Clause does not 'demand that a statute necessarily apply equally to all persons' or require 'things which are different in fact . . . to be treated in law as though they were the same,' [Cit.] this Court has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances. [Cits.] As the Court has stated, a legislature may 'provide for the special problems of women.' [Cit.]" Michael M. v. Sonoma County Superior Court, 67 LE2d 437, supra, p. 442.

The pandering statute is one part of a broad statutory scheme that serves important governmental objectives, and this statute is substantially related to the achievement of these objectives. "These include the interest of the public in the quality of life and the total community environment, the tone of commerce in the great city centers, and, possibly, the public safety itself." Paris Adult Theatre I v. Slaton, 413 U. S. 49, 58 (93 SC 2628, 37 LE2d 446) (1973).

Our legislature, having determined that prostitution is contrary to the public interests above mentioned, enacted several laws to cover every aspect or stage in the commission of the crime of prostitution. These include laws against sodomy (Code Ann. § 26-2002); solicitation of sodomy (§ 26-2003); fornication (§ 26-2010); public indecency (§ 26-2011); prostitution (§ 26-2012); pimping (§ 26-2013); keeping a place of prostitution (§ 26-2014); pandering (§ 26-2016); pandering by compulsion (§ 26-2017); and masturbation for hire (§

26-2021). It is noted that some of these laws are gender-based and others not.

The appellants argue that the gender discrimination of the pandering statute ignores the reality of the alleged existence of male prostitutes. The appellants have the burden of showing the existence of the class — male prostitutes and female panderers — claimed to be unjustly favored by the statute. See *State v. Gaither,* 236 Ga. 497, 499 (244 SE2d 378) (1976). Even proof of such a fact would not support their position that such discrimination is invalid, however. At stake is more than the "embarrassment by sexual advances," to which the appellants allude. As Justice Stewart's concurring opinion in Michael M., 67 LE2d 437, supra, p. 449, points out, "the pregnant unmarried female confronts problems more numerous and more severe than any faced by her male partner. She alone endures the medical risks of pregnancy or abortion. She suffers disproportionately the social, educational, and emotional consequences of pregnancy." Justice Rehnquist observes in Michael M., id., p. 445, that "the risk of pregnancy itself constitutes a substantial deterrence to . . . females. No similar natural sanctions deter males. A criminal sanction imposed solely on males thus serves to roughly 'equalize' the deterrents on the sexes." Moreover, besides the above risks, prostitution exposes the female to risks of physical harm and sexual violence (to which she is more susceptible than are males) and contracting (and consequent transmittal) of venereal disease.

Finally, it is argued that the pandering statute could have been written differently to be gender neutral, and still serve its goals equally well. "The relevant inquiry, however, is not whether the statute is drawn as precisely as it might have been, but whether the line chosen by the . . . [l]egislature is within constitutional limitations . . . That other States may have decided to attack the same problems more broadly, with gender-neutral statutes, does not mean that every State is constitutionally compelled to do so." Michael M., 67 LE2d 437, supra, pp. 445, 450.

Since the above-mentioned undesirable consequences to females and to society in general are for the most part initiated and perpetrated by males, we conclude that the legislature was justified in attacking the problem of prostitution at this particular stage at least (i.e., at its inception) by imposing a sanction on males to deter the first step in the commission of the crime and reduce, if not eliminate, the demand, hence incentive, for the prostitute's illicit services. Accordingly, the statute is not subject to the equal protection attack.

2. The appellants contend that their acts of soliciting a female to perform an act of prostitution *with them,* rather than with a third

party, do not constitute violations of the pandering statute, which, they urge, is intended to apply only to enlisting females into the "business" of prostitution.

With regard to legislative intent, the Supreme Court noted in Michael M., 67 LE2d 437, supra, p. 443, that "[t]his Court has long recognized that 'inquiries into congressional motives or purposes are a hazardous matter,' [Cits.] and the search for the 'actual' or 'primary' purpose of a statute is likely to be elusive. [Cits.] Here, for example, the individual legislators may have voted for the statute for a variety of reasons. Some legislators may have been concerned about preventing teenage pregnancies, others about protecting young females from physical injury or from the loss of 'chastity,' and still others about promoting various religious and moral attitudes towards premarital sex."

Aside from the possible intent of the various legislators who voted for the statute, the wording of the statute itself makes the solicitation to perform but a single act of prostitution a violation. Furthermore, the statute does not specify, as it could have, that the solicitation must be for an act to be performed *with another.* Indeed, a predecessor to the present statute — former Code § 26-6201. Soliciting and procuring, a codification of Ga. L. 1918, p. 267 — was construed to apply to solicitation either in one's own behalf or in behalf of another. *Osborne v. State,* 92 Ga. App. 518 (88 SE2d 862) (1955).

The appellants cite us to the legislative committee notes to the present Code Ann. §§ 26-2016, 26-2017, to wit: "While the term employed in the sections, pandering, is new to the Georgia law, it is essentially a label employed to cover the many offenses separately covered under § 26-6204 of the former Code.

"The essence of pandering is the recruitment of females into the practice of prostitution . . ."

Former Code Ann. § 26-6204 was a codification of Ga. L. 1943, pp. 568, 570. Under this statute it was an offense to "cause, induce, persuade, encourage, or procure by promise, threat, violence, or by any scheme or device, a female to become a prostitute . . ." See *Stone v. State,* 76 Ga. App. 96 (2) (45 SE2d 89) (1947); *Price v. State,* 76 Ga. App. 105 (3) (45 SE2d 96) (1947). Even if the primary emphasis of the present pandering statute is, as the committee notes seem to indicate, upon the recruitment of females into the practice of prostitution, the fact remains, as we have pointed out, that the statute's wording renders one guilty of pandering when he solicits a female to commit an act of prostitution, either for himself or another. Under Code Ann. § 26-2012, a female becomes a prostitute once she has performed, offered, or consented to perform the first act of sexual intercourse for

money.

*Judgment affirmed. Jordan, C. J., Clarke, Smith and Gregory, JJ., concur. Hill, P. J., concurs in the judgment only.*

DECIDED SEPTEMBER 24, 1981 —
REHEARING DENIED OCTOBER 14, 1981.

*Amos R. Worth,* for appellant (case no. 37718).
*Paul M. Hoffman,* for appellant (case no. 37719).
*Hinson McAuliffe, Solicitor, George Weaver, Paul C. McCommon III, Assistant Solicitors,* for appellee.