**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 13, 2015**

# In the Court of Appeals of Georgia

A14A1786. KENDRICK v. THE STATE.                    DO-065 C

DOYLE, Presiding Judge.

In a jury trial, Stephen Kendrick was found guilty of aggravated child molestation,[1] statutory rape,[2] child molestation,[3] contribution to the delinquency of a minor,[4] and criminal trespass.[5] He appeals from the denial of his motion for new trial, challenging the sufficiency of the evidence as to the aggravated child

---

[1] OCGA § 16-6-4 (a) (1), (c). The statutory rape and child molestation counts merged with this count for purposes of sentencing.

[2] OCGA § 16-6-3 (a).

[3] OCGA § 16-6-4 (a) (1).

[4] OCGA § 16-12-1 (b) (1).

[5] OCGA § 16-7-21 (b) (2).

molestation count on the ground that there was no physical injury to the victim. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence."[6] So viewed, the record shows that Kendrick, a 32-year-old man, approached the victim's father at a gas station seeking a ride. Kendrick then explained that he had nowhere to go, and the father allowed Kendrick to work at his store and stay in the basement of his home, where he lived with his wife and children, including his 13-year-old daughter, L. F. After Kendrick appeared to grow closer to L. F., the father asked Kendrick to leave. A few weeks later, L. F. ran away from her home and stayed with Kendrick at his sister's or an apartment. Kendrick had intercourse with L. F., and they later learned that she was pregnant after L. F. was located by police, and her mother took her to the hospital for an evaluation. L. F. carried the baby to term and delivered a healthy boy.

Kendrick did not dispute his paternity of the child, and he was subsequently charged with aggravated child molestation, statutory rape, child molestation, interference with custody, contributing to the delinquency of a minor, and criminal

---

[6] *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

trespass. Following a jury trial, he was found guilty of each count except for interference with custody. Kendrick's motion for new trial was denied, giving rise to this appeal.

Kendrick contends that the evidence was insufficient to support his conviction for aggravated child molestation because there was no evidence of a physical injury caused by the act of having intercourse with the victim. OCGA § 16-6-4 (c) defines the offense as follows: "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation [e.g., an immoral or indecent act to any child under the age of 16] *which act physically injures the child* or involves an act of sodomy."[7] There was no evidence at trial of an act of sodomy, therefore, the State had the burden to prove that Kendrick's molestation caused a physical injury to the victim.

The evidence in the case was somewhat unusual in that there was no physical exam near in time to the molestation, and the victim, who believed she was in a romantic relationship with Kendrick, did not testify that the intercourse was

---

[7] (Emphasis supplied.)

physically forceful, painful, or otherwise physically injurious.[8] Thus, there was no evidence presented depicting the physical injuries one might expect in a case such as this.[9] Perhaps because of these peculiar facts, the indictment alleged, and the State argues on appeal, that Kendrick caused an injury as follows:

> Stephen Troy Kendrick [is accused of] aggravated child molestation . . . for that said accused . . . did unlawfully commit an immoral and indecent act to, with and the presence of [the victim], a child under the age of sixteen (16) years, by engaging in sexual intercourse with [the victim], with intent to arouse and satisfy his sexual desires; said act involving physical injury to said child by impregnating her causing said child to endure childbirth; []contrary to the laws of [Georgia]. . . .

---

[8] Notably, during deliberations the jury asked the trial court whether "childbirth [is] an injury under the aggravated child molestation [statute]?" With the parties' agreement, the court stated that this was a factual issue for resolution by the jury. This characterization is not challenged on appeal.

[9] Compare, e.g., *Mangham v. State*, 291 Ga. App. 696, 697 (662 SE2d 789) (2008) ("The victim's testimony indicating the molestation was painful sufficed to prove the element of physical injury.") (punctuation omitted); *Bell v. State*, 294 Ga. App. 779, 780 (1) (670 SE2d 476) (2008) ("[T]he [victim] testified to her age of 13 at the time of the incident, to [the defendant's] forcible act of intercourse upon her, and to her pain and bleeding from the act; . . . and the nurse testified to the injuries to the girl's hymen and vaginal area resulting from penetration.").

4

OCGA § 16-6-4 does not define what "physically injures" means, and we have found no Georgia case law explicitly defining the term in this context,[10] so

> we must turn to the basic rules of statutory construction. Specifically, we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.[11]

According to Black's Law Dictionary (6th ed. 1990), the term "injury" means "any wrong or damage done to another, either in his person, rights, reputation, or property," and more specifically, "bodily injury" means "[p]hysical pain, illness[,] or any impairment of physical condition." It is axiomatic that a full-term pregnancy involves at least some impairment of physical condition, and furthermore, there was

---

[10] See generally *Fluker v. State*, 248 Ga. 290, 293 (2) (282 SE2d 112) (1981) (noting a possible legislative intent in passing an anti-pandering statute as "protecting young females from physical injury or from the loss of 'chastity'"); *Barnes v. State*, 244 Ga. 302, 304 (1) (260 SE2d 40) (1979) (noting that carnal knowledge can cause physical injury and pregnancy to "previously chaste" underage girls). Compare *Hightower v. State*, 256 Ga. App. 793, 795 (570 SE2d 22) (2002) (in the context of a cruelty to children charge, finding insufficient evidence of *mental pain* caused to a minor who described her physical experience of pregnancy and childbirth only as "good pain").

[11] (Punctuation omitted.) *State v. Mussman*, 289 Ga. 586, 588 (1) (713 SE2d 822) (2011).

evidence in this case that the victim experienced pain during the two-day labor and delivery process. So by the above definitions, the record supports a finding of a physical injury to the victim caused by the molestation.

Furthermore, courts in other jurisdictions have held that pregnancy constitutes physical harm,[12] concluding with "no trouble . . . that pregnancy and childbirth resulting from [non-consensual sexual conduct] constitute physical injury" to the victim.[13] In this case, the underage victim's professed desire to endure the pregnancy and deliver the baby is of no moment because of her legal incapacity to consent to the intercourse.[14]

---

[12] See *United States v. Asberry*, 394 F3d 712, 717 (II) (9th Cir. 2005) (statutory rape is a "crime of violence" because "physical risks of pregnancy among adolescent females are 'injuries' as the term is defined in common and legal usage"), quoting Oxford English Dictionary (2d Ed. 1989); *United States v. Shannon*, 110 F3d 382, 388 (7th Cir. 1997) ("Pregnancy resulting from rape is routinely considered a form of grave bodily injury."), abrogated on other grounds by *Begay v. United States*, 553 U. S. 137, 148 (II) (B) (2) (128 SCt 1581, 170 LE2d 490) (2008); *State v. Gonzales*, 2011 Ariz. App. Unpub. LEXIS 94 (Ariz. Ct. App. 2011) (physical precedent only) ("An unwanted pregnancy constitutes physical harm."); *State v. Jones*, 889 SW2d 225, 231 (III) (Tenn. Crim. App. 1994) (unwanted pregnancy is "personal injury"); *People v. Sargent*, 86 Cal. App. 3d 148, 150 (1978) ("Pregnancy resulting from rape is great bodily injury.").

[13] *Fenelon v. State of Florida*, 629 So2d 955, 956 (1993).

[14] See generally *Loyd v. State*, 288 Ga. 481, 492 (4) (c), n. 8 (705 SE2d 616) (2011) (noting the age – 16 – at which a minor can legally consent to certain sexual

In light of these accepted views of physical injury in the present context, we conclude that the record here supported a finding that Kendrick's victim was physically injured by the molestation. Accordingly, his enumeration is without merit, and we affirm his conviction.

*Judgment affirmed. Miller, J., concurs. Dillard, J., concurs fully and specially.*

---

acts); *Shannon*, 110 F3d at 388 ("To the extent that a 13 year old is incapable of appreciating the full risk and consequences of sexual intercourse, her ensuing pregnancy and parturition (or abortion) must be considered at least quasi-involuntary and could well be considered, therefore, a physical injury even if the pregnancy is normal.").

A14A1786. KENDRICK v. THE STATE


DILLARD, Judge, concurring fully and specially.

In life and in law, context is often crucial; and in this case, context is extremely important. Suffice it to say, as a general matter, it would be highly unusual (and indeed offensive) to refer to a woman's pregnancy as a "physical injury." Such a characterization would not only be rightly perceived as demeaning to the mother, but also as an attempt to dehumanize her unborn child. The question before us, however, does not concern a mother's decision to carry her child to term, but is instead whether a man who molests a young girl and impregnates her as a result of that evil act should be deemed to have "physically injured" her within the meaning of OCGA § 16-6-4

(c) (*i.e.*, the aggravated child molestation statute). And like the majority, I answer that question in the affirmative.

As the majority correctly notes, OCGA § 16–6-4 does not define what "physically injures" means, and there is no precedent established by this Court or our Supreme Court defining the term in this particular context. The question, then, is whether a fair reading of the relevant statutory language,[1] "physically injures," encompasses the physical changes and conditions associated with a pregnancy caused by child molestation. And like the majority, my analysis necessarily begins with familiar and binding canons of statutory construction. In this respect, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant," which means that we "must afford the statutory text its plain and

---

[1] *See State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies . . . .")); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 33 (1st ed. 2012) (describing and endorsing the "Fair-Reading Method" of interpreting statutes—*i.e.*, "determining the application of a governing text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.").

ordinary meaning, consider the text contextually, and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would."[2]

Here, I agree with the majority that a fair reading of "physically injures," in this unique statutory context, includes the physical changes and conditions associated with a pregnancy resulting from child molestation. Indeed, in addition to the definitions offered by the majority, *The Oxford English Dictionary* defines "injure" as "[t]o do hurt or harm; to inflict damage or detriment upon; to hurt, harm, damage; to impair in any way."[3] And as the majority aptly notes, "[i]t is axiomatic that a full-term pregnancy involves at least some impairment of physical condition[.]" Thus, I have no reservations in joining the majority's conclusion that the physical changes and conditions experienced by a woman as a result of pregnancy caused by child molestation constitute a "physical injury" within the meaning of OCGA § 16–6-4 (c).[4]

---

[2] *Martinez v. State*, 325 Ga. App. 267, 273 (750 SE2d 504) (2013) (punctuation and citation omitted); *accord Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

[3] *The Compact Oxford English Dictionary* 851 (2d ed. 1991).

[4] *See United States v. Shannon*, 110 F3d 382, 388 (7th Cir. 1997) (noting that pregnancy can involve, among other things, "morning sickness, fatigue, edema, back pain, weight gain . . . ."); *People v. Sargent*, 150 CalRptr 113, 116 (1) (1978) (noting that "[m]ajor physical changes begin to take place at the time of pregnancy," which "involves a significant bodily impairment affecting a women's health and well being.").

3

I fully concur, then, with the majority's opinion, and as such, it may be cited as precedential authority in future cases. I do so, however, with the understanding that our characterization of the physical changes and conditions associated with a pregnancy caused by child molestation as a "physical injury" is limited to this unique statutory context (*i.e.*, as a basis for an enhanced criminal penalty against a child molester).[5] Nothing in this opinion may be used to deny a mother or her unborn child any rights, protections, or privileges that they would otherwise be entitled to under state or federal law.

---

[5] *See People v. Cathey*, 681 NW2d 661, 514 (C), n. 5 (Mich. App. 2004) (noting "the importance of the circumstances in which this issue is discussed," and that "[o]utside the instant context, i.e., a pregnancy resulting from an illegal act, it may seem peculiar to consider [the conditions of] pregnancy to [constitute] a bodily injury" because "pregnancy is a wonderful event that is celebrated as one of life's greatest gifts.").