DWAYNE KEITH STANIFER, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 23012

March 24, 1993                                        849 P.2d 282

*Morgan D. Harris,* Public Defender, *Gary H. Lieberman,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney and *James Tufteland,* Deputy District Attorney and *Ulrich W. Smith,* Deputy District Attorney, Clark County, for Respondent.

---

## OPINION

*Per Curiam:*

Appellant Dwayne Keith Stanifer was arrested for pandering after arranging an encounter with a prostitute and two undercover police officers. A jury convicted Stanifer of one count of pandering for which he was sentenced to 18 months in prison. Stanifer appealed to this court, contending, *inter alia,* that the district court erroneously refused his requested jury instruction on solicitation for prostitution as a lesser-related offense. We agree and reverse.

### FACTS

At approximately 3:30 a.m. on July 15, 1991, two undercover detectives from the Vice Division of the Las Vegas Metropolitan Police Department observed Gina Marie Shaw, who the detectives suspected was a prostitute, talking with a man at Caesars Palace casino. Shaw left the man and went to the bar, where she engaged in conversation with her fiance, Stanifer. The detectives approached Shaw and introduced themselves, giving false names. Detective Roy Phillips asked Shaw if she was familiar with Pahrump. She replied she was not, whereupon Stanifer replied that Pahrump was approximately 100 miles away. When Stanifer asked why the detectives wanted to go to Pahrump, Phillips responded that they were looking for a house that was located out there. Stanifer asked if they were looking for a "cathouse" (house of prostitution); Detective George Pease responded affirmatively.

Stanifer called the undercover detectives away from the bar and told them they did not need to go to Pahrump. He told the detectives that he had three girls working for him and could arrange for the two men to spend some time with one of them for

a fee. Stanifer said that the girl at the bar (Shaw) was one of his girls and he could arrange a "date"[1] with her for $150 apiece. Stanifer assured the officers they would have a "good time." Detective Pease confirmed that Stanifer was referring to sex.

Stanifer and the detectives rejoined Shaw and the four proceeded to the front entrance of Caesars Palace. Once outside, Stanifer informed Shaw that he had made arrangements with the two men and told the officers to talk to her. Phillips told Shaw that Stanifer had quoted them $150 an hour per man. Shaw objected to the price, stating she wanted $200 per hour. Stanifer intervened on behalf of the detectives, stating that he had in fact agreed to $150. Shaw assented and discussed with the officers the type of sexual activities they could expect for their money. Although Stanifer offered the use of a room he had at the Stardust Hotel, Phillips declined, stating they had a room at Caesars and preferred to stay there. Shaw then removed an undetermined amount of money from her purse and handed it to Stanifer for safekeeping, "so she wouldn't get robbed." Stanifer told Shaw to check back with him within an hour.

As the conversation concluded, Stanifer stated he had to go check on his two other girls to make sure they were okay. Eventually, both Shaw and Stanifer were arrested and charged with soliciting prostitution and pandering and living off the earnings of a prostitute,[2] respectively.

Prior to the commencement of trial, Stanifer's counsel requested an instruction on solicitation for prostitution as a lesser-related offense of pandering. The district judge deferred his decision until the settling of jury instructions.

At trial, the State offered the testimony of Phillips, Pease and Shaw, each of whom testified to the events leading up to Stanifer's arrest. In addition, Shaw recounted that she had gone to Caesars alone on July 15, 1991, intending to pick up men and neither expecting nor wanting to see Stanifer there. Shaw testified that she had been a prostitute in Minnesota before she met Stanifer and only told him about it after their relationship became serious. On cross-examination, Shaw testified that Stanifer did not "induce, persuade, encourage, inveigle, entice or compel" her to engage or continue in prostitution. Stanifer invoked his constitutional right against self-incrimination; no other witnesses were called for the defense.

---

[1] Detective Phillips testified that "date" meant prostitution for a fee.

[2] Habeas corpus was granted as to the latter count for lack of evidence, since the money Shaw handed to Stanifer on the morning of the incident was not shown to be money she earned in prostitution.

At the settling of jury instructions, defense counsel again requested an instruction on the lesser-related offense of solicitation. Stanifer's counsel argued that Stanifer was guilty of solicitation, which included procuring customers for the prostitute. The prosecutor objected and the court denied the requested instruction without comment. The only crime on which the jury was instructed was pandering. Not surprisingly, Stanifer was found guilty of pandering.

Stanifer filed a post-trial motion for a new trial, to set aside the verdict, for acquittal and to dismiss, on the grounds, *inter alia,* that the evidence was insufficient to sustain the pandering conviction. Stanifer again argued that in procuring customers for Shaw, he was guilty of solicitation, not pandering. At the hearing on the motion, the district judge initially indicated that defense counsel had declined an instruction on solicitation as a lesser-included offense. The district judge later recalled that Stanifer had requested an instruction on solicitation as a lesser-related offense. Nevertheless, the motion was denied. Stanifer's subsequent request for reconsideration of the district court's ruling on the jury instruction and motion for new trial were also denied. This appeal ensued.

## DISCUSSION

Stanifer contends that the district court erred in refusing to instruct the jury on solicitation for prostitution as a lesser-related offense of pandering. Citing Moore v. State, 105 Nev. 378, 776 P.2d 1235 (1989), as authority, Stanifer argues that the evidence supported his right to have the jury instructed on his theory of solicitation.

In *Moore* we held that, in some circumstances, fairness to the defendant requires the district court to instruct the jury on lesser-related offenses. 105 Nev. at 383, 776 P.2d at 1238. Lesser-related offenses are related to the principal offense but are not lesser included offenses of the principal offense. Lord v. State, 107 Nev. 28, 36, 806 P.2d 548, 553 (1991). The rationale for requiring an instruction on a lesser-related offense is to give the trier of fact an option "'other than conviction or acquittal when the evidence shows that the defendant is guilty of some crime but not necessarily the one charged . . . .'" *Moore,* 105 Nev. at 383, 776 P.2d at 1238, (quoting People v. Geiger, 674 P.2d 1303 (Cal. 1984)). We determined that this option protects the interests of both the defendant and the state. *Id.*

A defendant's right to a jury instruction on lesser-related

offenses is not without limitation. In *Moore,* we held that the jury should receive an instruction on a lesser-related offense if the defendant has satisfied three conditions: "(1) the lesser offense is closely related to the offense charged; (2) defendant's theory of defense is consistent with a conviction for the related offense; and (3) evidence of the lesser offense exists." *Moore,* 105 Nev. at 383, 776 P.2d at 1239 (citation omitted); *see also Lord,* 107 Nev. at 36, 806 P.2d at 553.

The three conditions were satisfied in the instant case. First, solicitation for prostitution, or "pimping," is closely related to the offense of pandering. The terms "pimping" and "pandering" have been used to describe promotion of prostitution, which is generally punished more severely than prostitution itself. 2 Wharton's Criminal Law, § 274 (14th ed. 1979). The referenced treatise describes the principal difference between "pimping" and "pandering" thusly: "[A] 'pimp' solicits patrons for the prostitute and lives off her earnings, while a 'panderer' recruits prostitutes and sets them up in business." *Id.* This definition is consistent with case law in Nevada, as well as other jurisdictions.

For example, pandering has been charged for such conduct as offering customers *to the prostitute* or *requesting a person to work as a prostitute. See, e.g.,* Sheriff v. Gordon, 96 Nev. 205, 606 P.2d 533 (1980) (defendant offered to set prostitute up in "escort business" in exchange for a fee); Sheriff v. Horner, 96 Nev. 312, 608 P.2d 1106 (1980) (defendant offered to "direct" prostitute to customers in exchange for portion of fee); and Sheriff v. Hilliard, 96 Nev. 345, 608 P.2d 1111 (1980) (defendant asked undercover officer if she would work for him as a prostitute). *See also* State v. Rodgers, 655 P.2d 1348 (Ariz.Ct.App. 1982) (defendant suggested to former employee that she could earn money in a hurry by engaging in prostitution).

Conversely, a person whose conduct consists of procuring customers for a prostitute is generally charged with solicitation. *See, e.g.,* People v. Castanza, 236 N.E.2d 251 (Ill.Ct.App. 1968) (bartender arranged encounter with undercover officer and prostitute). In Fluker v. State, 282 S.E.2d 112 (Ga. 1981), *appeal dismissed,* 445 U.S. 1009 (1982), the Georgia Supreme Court distinguished between soliciting and pandering. The court stated that soliciting (under the Georgia statute) applied to soliciting either in one's own behalf or in behalf of another, while the primary emphasis of pandering is upon the recruitment of females into the practice of prostitution. 282 S.E.2d at 115.

Here, Stanifer was charged with pandering, a felony, which consists of inducing, persuading, encouraging, inveigling, enticing or compelling a person to become a prostitute or to continue

to engage in prostitution . . . ." NRS 201.300(1)(a). Although NRS 201.354[3] is unclear as to what constitutes solicitation for prostitution, the Clark County ordinance proscribing solicitation specifically includes agreeing to "afford an opportunity to commit an act of prostitution." Clark County Code § 12.08.020.[4] The State's evidence of pandering consisted of Stanifer's offer to arrange a tryst between Shaw and the officers in exchange for money. However, that conduct could also constitute solicitation under the Clark County ordinance and the authorities cited above.

Second, Stanifer's defense theory was consistent with a conviction for solicitation for prostitution. In closing argument, defense counsel argued that Stanifer, like Shaw, was guilty of solicitation but not pandering. Significantly, the State concedes that solicitation was Stanifer's theory of defense.

Third, evidence of solicitation for prostitution exists. The testimony adduced at trial demonstrated that Stanifer's conduct consisted of procuring prospective customers for a prostitute. Unfortunately for Stanifer, the propositioned, prospective customers were undercover vice detectives.

Because the prerequisites of *Moore* were satisfied in this case, it was error for the district court to refuse Stanifer's jury instruction on solicitation for prostitution as a lesser-related offense of pandering. Stanifer's conviction for pandering must, therefore, be reversed. In light of this conclusion, we need not address Stanifer's remaining assignments of error.

## CONCLUSION

For the reasons discussed above, we reverse the judgment pursuant to jury verdict of one count of pandering. We conclude, however, that a new trial is unwarranted since, given the guilty verdict, justice may be accomplished without prejudice to Stanifer by remanding this matter for judgment and sentencing on the two lesser-related counts of solicitation for prostitution.

---

[3]NRS 201.354 provides: "It is unlawful for any person to engage in prostitution or solicitation therefor, except in a licensed house of prostitution." Solicitation is a misdemeanor.

[4]Section 12.08.020 of the Clark County Code states in its entirety:

Accosting and soliciting unlawful. It is unlawful for any person to accost, solicit or invite another in any public place or in or from any building or vehicle by word, gesture, publication or any other means to commit, offer, *agree to afford an opportunity* to commit an act of prostitution.

(Emphasis added.)