# IN THE SUPREME COURT OF THE STATE OF NEVADA

CHRISTOPHER FRAZIER A/K/A
LARON MARKTELL JOHNSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61639

FILED

AUG 10 2016



*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of battery resulting in substantial bodily harm constituting domestic violence, battery with the use of a deadly weapon constituting domestic violence, assault with the use of a deadly weapon, coercion with the use of a deadly weapon, living from the earnings of a prostitute, living with a prostitute, and preventing or dissuading a witness from testifying or producing evidence. Eighth Judicial District Court, Clark County; Kathleen E. Delaney, Judge.

In 2012, appellant Christopher Frazier shared an apartment in Clark County with K. Edwards, a prostitute. After a domestic violence episode, Edwards admitted herself to the emergency room and ultimately divulged that Frazier, her pimp, had assaulted and battered her. Thereafter, a grand jury indicted Frazier with living with a prostitute (lives-with charge), a category D felony under NRS 201.360, among other charges. At the close of evidence, Frazier asked the district court to strike the lives-with charge as unconstitutional, arguing that "[i]t's vague, and people do have a due process right to cohabitate with whoever they deem

16-24775

fit." The district court denied Frazier's motion to dismiss the lives-with charge, and the jury convicted him of said charge and all others.

## I.

On appeal, Frazier challenges his conviction of the lives-with charge, arguing that NRS 201.360(1)(e), which makes a felon of anyone who "[l]ives with . . . a common prostitute," is unconstitutionally overbroad because it infringes on the freedom of association safeguarded by the First Amendment.[1] Our review is de novo, *Ford v. State*, 127 Nev. 608, 612, 262 P.3d 1123, 1126 (2011), and we affirm.

The United States Supreme Court has identified two types of associational rights that the Constitution protects: freedom of intimate association and freedom of expressive association. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). The freedom of intimate association is "an intrinsic element of personal liberty" as it involves the choice "to enter into

---

[1]As noted, Frazier framed this as a vagueness challenge in district court, and repeats the argument on appeal. The State countered: "there is case law in Nevada that says that a Complainant who—or a defendant whose conduct clearly violates the statute, cannot assert the void for vagueness argument, and that is the position of the State in this case, that he clearly violated that statute, and it's not vague as applied." We agree with the State that Frazier's argument is procedurally defective. Frazier never alleges that his hypothetical violations applied to him and vagueness challenges may not be raised by "[o]ne to whose conduct a statute clearly applies." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982) (internal quotation marks omitted); *see United States v. Williams*, 553 U.S. 285, 304 (2008); *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 512, 217 P.3d 546, 553 (2009). Although a different iteration of a vagueness challenge may be brought where a statute lacks sufficient standards such that it encourages arbitrary and discriminatory enforcement, *Kolender v. Lawson*, 461 U.S. 352, 357 (1983), Frazier's challenge fails, again procedurally, for want of adequate briefing on this point.

and maintain certain intimate human relationships," such as "marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Id.* at 617, 619-20 (citations omitted). Expressive association, on the other hand, is safeguarded to allow individuals to "engag[e] in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618.

Courts analyzing the differences between intimate and expressive association have held that expressive association is rooted in the First Amendment, whereas intimate association stems from the substantive due process rights of the Fourteenth Amendment. *See, e.g., Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) ("We believe the familial right of association is properly based on the 'concept of liberty in the Fourteenth Amendment.' . . . The freedom of intimate association is a substantive due process right, as is its subset, the familial right of association."); *IDK, Inc. v. Cty. of Clark*, 836 F.2d 1185, 1192 (9th Cir. 1988) ("In protecting 'certain kinds of highly personal relationships,' the Supreme Court has most often identified the source of the protection as the due process clause of the fourteenth amendment, not the first amendment's freedom to assemble." (citation omitted) (quoting *Roberts*, 468 U.S. at 618)); *Bailey v. City of Nat'l City*, 277 Cal. Rptr. 427, 434 (Ct. App. 1991) (noting that challenged rule regulates intimate, not expressive, association, and concluding that intimate association is outside the purview of the First Amendment and rather invokes liberty interests, rendering the overbreadth doctrine inapplicable); *City of Bremerton v. Widell*, 51 P.3d 733, 740 (Wash. 2002) ("The right of expressive association stems from the First Amendment, guarding those activities protected by

that amendment: speech, assembly, petition for the redress of grievances, and the exercise of religion. The right of 'intimate association' is derived from the due process concepts of the Fourteenth Amendment and the principles of liberty and privacy found in the Bill of Rights." (citation omitted)).

While the Supreme Court has not addressed whether the overbreadth doctrine applies to the freedom of intimate association, it has limited the overbreadth doctrine to First Amendment challenges. *See Arizona v. United States*, 567 U.S. ___, ___, 132 S. Ct. 2492, 2515 (2012) ("The fact that [a law] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (referring to overbreadth as "[t]he First Amendment doctrine of overbreadth," which remedies "the threat of enforcement of an overbroad law [that] may deter or 'chill' constitutionally protected speech"); *Scott v. First Judicial Dist. Court*, 131 Nev., Adv. Op. 101, 363 P.3d 1159, 1162 (2015) ("[T]he overbreadth doctrine invalidates laws that infringe upon First Amendment rights." (internal quotation marks omitted)).

Despite invoking the overbreadth doctrine to invalidate his conviction of living with a prostitute, Frazier neither acknowledges nor briefs whether said doctrine properly extends beyond rights of expressive association to rights of intimate association.[2] As the law seemingly

---

[2]Though Frazier did not articulate which freedom of association—expressive or intimate—he based his overbreadth claim on, his arguments below and on appeal make clear that he alleged violations of his freedom

*continued on next page...*

provides that intimate association is rooted in the Fourteenth Amendment, while the overbreadth doctrine is limited to First Amendment protections, we decline sua sponte to extend the First Amendment overbreadth doctrine to the facial overbreadth challenge articulated by Frazier on direct appeal. *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (referring to the overbreadth doctrine as "strong medicine" that is to be employed "sparingly and only as a last resort"); *see Griffin*, 983 F.2d at 1547 (concluding that the familial right of association is derived from the substantive due process right to privacy in the Fourteenth Amendment, which requires a Fourteenth Amendment balancing of interests for alleged violations); *Hvamstad v. Suhler*, 727 F. Supp. 511, 517 (D. Minn. 1989) ("Given the limited scope of the overbreadth doctrine and the Supreme Court's analysis of the foundations of the freedom of association, this court concludes that one cannot launch an overbreadth attack based upon the freedom of intimate association."); *Bailey*, 277 Cal. Rptr. at 434 (rejecting overbreadth claim for violation of intimate association, stating: "While a liberty interest is protected, it does not enjoy the special solicitude accorded First Amendment concerns, including benefits of the facial overbreadth doctrine"); *City of Bremerton*, 51 P.3d at 742 (rejecting intimate association overbreadth argument as party had "not presented any persuasive basis upon which we might

---

*...continued*
of intimate association. For example, instead of relying on the First Amendment freedom of expressive association, Frazier argued below that "people do have a due process right to cohabitate with whoever they deem fit." Moreover, in his opening brief, Frazier discusses the public policy of criminalizing one based on their "living arrangements," which undoubtedly invokes the freedom of intimate association.

extend the overbreadth doctrine to a claim of right not arising under the First Amendment"). *But see State v. Holiday*, 585 N.W.2d 68, 71 n.1 (Minn. Ct. App. 1998) ("We believe, however, that it is appropriate to apply the overbreadth doctrine to such a sweeping limitation on the freedom of [intimate] association.").

While we are sympathetic to Frazier's argument that the lives-with clause may implicate innocent and temporary cohabitation arrangements, Frazier has failed to provide a persuasive legal basis to extend the First Amendment overbreadth doctrine to the freedom of intimate association. Of note, Frazier did not assert an overbreadth challenge in district court. Though this court has discretion to reach constitutional issues raised for the first time on appeal, *Tam v. Eighth Judicial District Court*, 131 Nev., Adv. Op. 80, 358 P.3d 234, 239 (2015), as a prudential matter it is inappropriate to do so where, even on appeal, the constitutional argument is not clearly framed and thoroughly briefed. *See Cuzdey v. State*, 103 Nev. 575, 578, 747 P.2d 233, 235 (1987) ("When attorneys fail to brief a case adequately, this court is forced to divert its limited resources to the task of compensating for counsel's derelictions in order to reach and resolve the merits of the appeal properly."). While some cases have extended the overbreadth doctrine to intimate association, *see, e.g., Holiday*, 585 N.W.2d at 71 n.1, these cases are in the minority of jurisdictions, which is not enough to demonstrate that the district court committed reversible error. And, as applied to Frazier, the statute does not suffer the arguable constitutional infirmities he posits as to other, hypothetical persons. For these reasons, we reject Frazier's challenge to his charge for living with a prostitute.

## II.

In addition to his constitutional challenge, Frazier asserts numerous non-constitutional errors. First, Frazier argues that the district court erred by admitting the expert testimony of Detective Baughman on "pimp culture" that was "baseless and prejudicial." Though we recognize that Baughman made statements that were both irrelevant and inflammatory, Frazier did not object to Baughman's testimony, and we cannot say that any error by the district court in allowing Baughman to testify as he did was plain. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008); *see also Ford*, 127 Nev. at 625 n.9, 262 P.3d at 1134 n.9 (declining to hold that testimony on the pimp culture is *per se* inadmissible). In any case, even if the evidence were admitted in error, we are not persuaded that Frazier's guilty verdicts rested on Baughman's testimony rather than the substantial evidence presented at trial. *Smith v. State*, 111 Nev. 499, 506, 894 P.2d 974, 978 (1995).

Second, Frazier argues that this court must grant relief because the grand jury indicted him based on illegal hearsay evidence. To reverse a grand jury indictment on appeal, a defendant must show "substantial prejudice." *Sheriff v. Keeney*, 106 Nev. 213, 216, 791 P.2d 55, 57 (1990). Moreover, a "jury convict[ion] . . . under a higher burden of proof cure[s] any irregularities that may have occurred during the grand jury proceedings." *Dettloff v. State*, 120 Nev. 588, 596, 97 P.3d 586, 591 (2004). We do not find substantial prejudice and further conclude that Frazier's subsequent conviction for the counts on which he was indicted negates his objection.

Third, Frazier raises an array of alleged evidentiary errors. Specifically, he argues that (1) Officer Jackson's statement that he found

 

out where Edwards and Frazier lived because "one of them" had a record in SCOPE, a criminal database, was prejudicial because the jury could have inferred that Frazier had a criminal record; (2) testimony that Frazier's laptop was stolen was prejudicial character evidence; (3) statements in Edwards' medical records noted by a treating physician that indicated Edwards had been abused over a period of several years was prejudicial because the jury could have inferred that Frazier was the one abusing Edwards; (4) the district court erred in denying his standing hearsay objection to "all statements attributed to . . . Edwards describing what occurred in the hospital"; and (5) recorded jail telephone calls in which Frazier asked other women to dissuade Edwards from testifying at trial were irrelevant based on the timing of the phone calls vis-à-vis the facts pleaded in the indictment. But whether or not these arguments have merit, any error would be harmless because none of these errors had a "substantial and injurious effect or influence in determining the jury's verdict," *Tavares v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (internal quotation marks omitted), *holding modified by Mclellan v. State*, 124 Nev. 263, 182 P.3d 106 (2008), and we do not view any errors that may have occurred as cumulative so as to warrant reversal inasmuch as the question of Frazier's guilt was not a close one, *see Rose v. State*, 123 Nev. 194, 211, 163 P.3d 408, 419 (2007) (stating that factors to be considered in a cumulative error analysis are "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged" (internal quotation marks omitted)).

Fourth, Frazier argues that the State withheld material evidence because Detective Mason testified that Frazier misrepresented his location to police in an attempt to evade them. Frazier contends that

the State did not disclose this statement to the defense at a pre-trial hearing. The State must disclose evidence "favorable to the defense if the evidence is material either to guilt or to punishment," meaning that "there is a reasonable probability that the result would have been different if the evidence had been disclosed." *Lay v. State*, 116 Nev. 1185, 1194, 14 P.3d 1256, 1262 (2000). It is not clear that the State "withheld" Frazier's statements at all because Frazier made these statements to police and could have so advised his counsel. Nonetheless, it is unlikely that disclosure of statements Frazier made to police demonstrating he attempted to evade them when police asked to interview him would have affected the outcome of the trial. Thus, Frazier has failed to show the evidence was material.

Fifth, Frazier claims the district court erred by failing to sequester Detective Mason. The State requested permission for Mason to remain in the courtroom during Frazier's testimony so Mason could "begin working on getting people or evidence lined up to rebut." The district court granted the State's request over Frazier's objection, relying on NRS 171.204, which prevents the court from excluding an investigating officer who has already testified on direct- and cross-examination. *See* NRS 50.155(2)(d). Thus, the district court committed no error here.

Sixth, Frazier challenges the district court's rejection of three of his requested jury instructions. One related to the flight instruction from *Carter v. State*, 121 Nev. 759, 770, 121 P.3d 592, 599 (2005), and the other two related to the burden of proof. "[W]hile the defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be, a defendant is not entitled to an instruction which incorrectly states the

law . . . ." *Barnier v. State*, 119 Nev. 129, 133, 67 P.3d 320, 322 (2003) (internal quotation marks and footnotes omitted). Frazier's first proffered instruction was an incorrect statement of the law. Although *Carter*, 121 Nev. at 770, 121 P.3d at 599, allowed an instruction inferring guilt from a defendant's flight after a criminal act, Frazier proposed the inverse of *Carter*, that his lack of flight should allow an inference of his innocence. Because the party proffering a jury instruction must demonstrate that it is warranted by Nevada law, NRCP 51(a)(1), the district court did not abuse its discretion by rejecting Frazier's inverse flight instruction. Frazier's second proffered instruction was based on *Crane v. State*, 88 Nev. 684, 504 P.2d 12 (1972). However, this court has held that "it is not error to refuse to give [the *Crane*] instruction where the jury has been properly instructed on the standard of reasonable doubt." *Mason v. State*, 118 Nev. 554, 559, 51 P.3d 521, 524 (2002). Thus, as Frazier did not challenge the sufficiency of the district court's reasonable doubt instruction, the district court did not abuse its discretion by rejecting Frazier's *Crane* instruction. Finally, Frazier submitted duplicative instructions on the burden of proof, arguing that "[t]his Court does not permit trial judges to exclude proposed defense instructions on the grounds that other instructions cover similar material," and citing to *Crawford v. State*, 121 Nev. 744, 754, 121 P.3d 582, 588 (2005). But, the principle cited to in *Crawford* is "that the district court may not refuse a proposed instruction on the ground that the legal principle it provides may be inferred from other instructions," because a jury is not expected to make legal inferences. *Id.* And, *Crawford* actually holds that defendants are not entitled to duplicative instructions. *Id.* at 754, 121 P.3d at 589. Thus, the district court did not

abuse its discretion in rejecting Frazier's proffered jury instructions. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Pickering

cc:     Hon. Kathleen E. Delaney, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SAITTA, J., concurring in part and dissenting in part:

Although I agree with my colleagues for the most part, I dissent as to the overbreadth challenge to the lives-with clause in NRS 201.360(1)(e). I acknowledge and share my colleagues' concerns regarding the overbreadth challenge to the lives-with clause in NRS 201.360(1)(e). There is no denying that the Supreme Court has not addressed whether the overbreadth doctrine, which historically has protected First Amendment rights, should be extended to protect the freedom of intimate association, which may be rooted in the Fourteenth Amendment.[1] Nor can I take issue with my colleagues' concern that Frazier did not address this distinction and provide a cogent basis on which the overbreadth doctrine should be extended in the fashion required to credit his challenge to the lives-with clause in NRS 201.360(1)(e).

But, I also cannot ignore the provision's exceedingly broad impact on the freedom of intimate association. Its plain language makes it a felony for any person to "[l]ive[ ] with . . . a common prostitute." NRS 201.360(1)(e). To say it is a sweeping limitation on the freedom of intimate association is to state the obvious—as long as the lives-with clause is on the books in Nevada, no one may live with a prostitute without committing a felony, not even a prostitute's closest family members or spouse. I see no limiting construction that mitigates that broad sweep. As my colleagues acknowledge, at least one other court has

---

[1]I note that the source of the right to intimate association, be it the First Amendment or the Fourteenth Amendment, is not settled. *See Piscottano v. Murphy*, 511 F.3d 247, 278 (2d Cir. 2007) ("[T]he source of the intimate association right has not been authoritatively determined.") (internal quotations omitted)).

been willing to apply the overbreadth doctrine to "sweeping limitation[s] on the freedom of association" because "the freedom of association [is] a constitutional right closely associated with First Amendment protections." *State v. Holiday*, 585 N.W.2d 68, 70-71 & n.1 (Minn. Ct. App. 1998). While that may be a minority position, I believe it is a sound one, and in the face of a statute that substantially and seriously impinges upon the freedom of intimate association, I am unwilling to wait for it to become a majority position or for a decision by the United States Supreme Court. The lives-with clause in NRS 201.360(1)(e) is unconstitutionally overbroad, and we should recognize it as such.

I also am troubled by the testimony provided by the State's expert on "pimp subculture," but ultimately I concur in my colleagues' decision as to this issue. This testimony was clearly inflammatory and, given the other evidence presented, it may have been irrelevant. Of particular concern is the expert's references, both direct and implied, to race—for instance his explanation that prostitutes "[d]on't look a black man in the eye because it's likely he could be a pimp." It is difficult to fathom how this testimony did not affect the jury's verdict. Nevertheless, because Frazier failed to object to Detective Baughman's testimony at trial, the question is whether there was plain or clear error and whether Frazier was actually prejudiced by the testimony. *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). Given the plethora of evidence that was presented at trial, I reluctantly defer to my colleagues' conclusion on this issue.

_____, J.
Saitta

