# IN THE SUPREME COURT OF THE STATE OF NEVADA

KEAIR JAMAL BOYD, A/K/A BRIAN
AUSIE BRANDON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 81195

FILED

JAN 13 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree kidnapping, sex trafficking, extortion, and three counts of sexual assault. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge.

A jury found appellant Keair Jamal Boyd guilty of the above-referenced crimes, after which the district court sentenced Boyd to an aggregate sentence of life imprisonment with parole eligibility after 256 months. On appeal, Boyd challenges several evidentiary decisions, jury instructions, and the sufficiency of evidence to support the first-degree kidnapping conviction. We address each of his arguments in turn.

*Evidentiary rulings*

*Expert testimony*

Boyd argues that the district court erred by allowing Sergeant Richard Leung to testify as an expert about the pimp-prostitute relationship because the subject matter fell within the jury's knowledge and Leung's testimony "unfairly bolstered" the victim-B.W.'s credibility. Boyd also contends that the testimony's prejudicial effect "far outweighed" its probative value.

Boyd acknowledges that we review his claim for plain error, or an "unmistakable" error based on "casual inspection of the record," because

22-01360

he failed to object to the expert testimony below. *Garner v. State*, 116 Nev. 770, 783, 6 P.3d 1013, 1022 (2000), *overruled in part on other grounds by Sharma v. State*, 118 Nev. 648, 655, 56 P.3d 868, 872 (2002). NRS 50.275 allows an expert witness to "testify to matters within the scope of" the witness's "scientific, technical or other specialized knowledge" if such knowledge "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." A qualified expert assists the jury only if he or she provides relevant testimony, *Higgs v. State*, 126 Nev. 1, 19, 222 P.3d 648, 660 (2010), that "helps educate lay jurors on specific areas of expertise . . . . [not] within the jury's province," *Shannon v. State*, 105 Nev. 782, 787, 783 P.2d 942, 945 (1989); *see also* NRS 48.015 (defining relevant evidence). We have previously said that testimony on pimp-prostitution culture and argot may constitute admissible expert testimony, *see, e.g., Ford v. State*, 127 Nev. 608, 625 n.9, 262 P.3d 1123, 1134 n.9 (2011), and here, we conclude that Leung offered relevant testimony that assisted the jury to determine whether Boyd's behavior and communications conformed to that of a pimp.

The testimony assisted the jury to understand the pimp-prostitute relationship and the terms commonly used by pimps and prostitutes to which the public may ascribe different meanings. Because this testimony tended to prove that Boyd was a pimp, the testimony was relevant. Further, contrary to Boyd's contention, B.W. did not offer "unambiguous" testimony that obviated the need for Leung's expert testimony. Instead, the expert testimony helped the jury to understand her testimony. For example, B.W. testified that Boyd paid for her manicures and clothes; Leung's testimony helped educate the jury that pimps pay for beauty maintenance and clothes to ensure prostitutes look presentable for

dates. Neither did Leung vouch for B.W., credit her allegations of abuse, or bolster her credibility. He did not testify about the facts of the case, the relationship between B.W. and Boyd, or the truthfulness of B.W.'s testimony. To the contrary, he reiterated that he knew nothing about the Boyd investigation. While Leung's testimony may have confirmed, or gave credence to, parts of B.W.'s account, it did not infringe on the jury's province to determine the facts and the culpability of the defendant. *See Townsend v. State*, 103 Nev. 113, 119, 734 P.2d 705, 709 (1987) (observing that experts may "characterize their findings, observations[,] and conclusions within the framework of their field of expertise, irrespective of the corroborative or refutative effect").

We also reject Boyd's contention that Leung's testimony presented an "exciting," prejudicial "summary" of the pimp-prostitute relationship and culture. Leung's explanations generalized the pimp-prostitute relationship. Indeed, some of Leung's testimony could be corroborative of Boyd's defense theory that the relationship was consensual. Even to the extent the testimony created a risk of prejudice, any risk did not substantially outweigh its probative value to explain to the jury how the pimp-prostitute relationship operates. NRS 48.035(1) (providing that relevant evidence is excluded where the "probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury"). Moreover, Boyd refuted the testimony with his own testimony that he had a consensual relationship with B.W. and that the rap culture in which he was involved imbued his communications with B.W. Thus, we conclude that the district court did not abuse its discretion, let alone commit plain error, in admitting Leung's expert testimony.

*Abortion evidence*

Boyd argues that the district court's refusal to admit evidence that B.W. obtained an abortion, for which he paid, hindered his ability to present his theory of defense that the two maintained a consensual relationship, and thus, infringed on his constitutional right to a fair trial. Reviewing for an abuse of discretion, *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008), we conclude that the district court's decision to preclude the mention of abortion did not thwart Boyd's ability to present a full and meaningful defense. Even though the jury did not hear the exact nature of the procedure, it heard that B.W. received "a medical procedure," as well as almost all of the surrounding details, including that Boyd accompanied B.W. to the procedure, paid for the procedure, and cared for her after the procedure. Thus, the record supports that the district court otherwise gave Boyd a meaningful opportunity to present his theory of defense about their consensual relationship.[1] The precise nature of the procedure does not tend to prove any fact of consequence to the State's charges or Boyd's defense of a consensual relationship. *See* NRS 48.015 (defining "relevant evidence"). By contrast, abortion is a politically and emotionally charged issue that presented a significant risk for its mention to distract jurors from the issues or to prejudice jurors. Thus, even if we deemed the nature of the procedure relevant, its prejudicial effect substantially outweighed its probative value. *See* NRS 48.035(1) (providing grounds for exclusion of relevant evidence). Accordingly, the district court

---

[1]Although Boyd claims that the district court hindered his theory of defense by limiting his ability to ask about B.W.'s use of a false name when she obtained the abortion, the district court permitted him to ask about her use of a false name on cross-examination. He never did. Regardless, the jury heard about several other occasions on which B.W. used a false name.

acted within its discretion when it excluded the mention of B.W.'s abortion, as opposed to her medical procedure.

*Jury instructions*

While we review Boyd's challenges to the contents of jury instructions de novo, we review Boyd's challenges to the decisions to give or refuse to give certain instructions for abuses of discretion. *Nay v. State*, 123 Nev. 326, 330, 167 P.3d 430, 433 (2007). We do not reverse a judgment based on an erroneous instruction if the error did not affect the outcome. *See Wegner v. State*, 116 Nev. 1149, 1155, 14 P.3d 25, 30 (2000), *overruled on other grounds by Rosas v. State*, 122 Nev. 1258, 1269, 147 P.3d 1101, 1109 (2006).

*Submitted jury instructions*

Boyd challenges the contents of four instructions given by district court: (1) the reasonable-doubt instruction; (2) the equal-and-exact-justice instruction; (3) the charges instruction; and (4) the specific-intent instruction. The first three instructions, he says, minimized the State's burden of proof and allowed the jury to ignore the presumption of innocence. The last instruction, Boyd alleges, misstated the law on specific intent for first-degree kidnapping.

*Reasonable-doubt and equal-and-exact-justice instructions*

Boyd argues that the language in the reasonable-doubt instruction invited the jury to "inflate[ ] the constitutional standard of doubt necessary for acquittal" and to convict "based on a lesser standard of proof than the [C]onstitution requires." In a similar vein, he contends that the so-called "equal and exact justice" instruction minimized the State's burden of proof and created a potential for the jury to reject the presumption of

innocence.[2] Both of these arguments are foreclosed by our precedent, *e.g.*, *Johnson v. State*, 118 Nev. 787, 806, 59 P.3d 450, 462 (2002) (declining to reconsider constitutionality of reasonable-doubt instruction based on purported lack of "meaningful principles or standards to guide the jury in evaluating the evidence" where the district court also instructed the jury on presumption of innocence and burden of proof), *overruled on other grounds by Nunnery v. State*, 127 Nev. 749, 772, 263 P.3d 235, 250-51 (2011); *Leonard v. State*, 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998) (explaining that the equal-and-exact-justice instruction "does not concern the presumption of innocence or burden of proof," and thereby, does not minimize either when the district court otherwise instructs the jury on those principles), or by the Legislature, *see* NRS 175.211 (defining reasonable doubt and prohibiting courts from giving any "other definition"). Additionally, we have reasoned that accompanying instructions on the presumption of innocence and the burden of proof, as the district court

---

[2]Although the State contends that Boyd never objected to the equal-and-exact-justice instruction, it does not provide a citation to the record in support. The jury instructions were apparently settled off the record, and the court and the parties failed to provide a summary of that discussion for the record. Accordingly, while we give Boyd the benefit of the doubt here, we again urge district courts and parties to memorialize on the record all objections to jury instructions and the court's resolution thereof. *Cf. Daniel v. State*, 119 Nev. 498, 508, 78 P.3d 890, 897 (2003) (stating, in the context of a capital case, that "while potential jury instructions can be discussed off the record preliminarily, the instructions must be settled on the record with each party given the opportunity to state its objection to any instruction and explain any requested instruction"); *Carson Ready Mix, Inc. v. First Nat. Bank of Nev.*, 97 Nev. 474, 477, 635 P.2d 276, 278 (1981) (recognizing "the problem . . . the practice of holding conferences regarding instructions in judges' chambers and off the record," and urging parties to conduct "conferences regarding instructions . . . on the record" in light of NRCP 51).

provided here, eliminate any "likelihood" that the jury applied the instructions in an unconstitutional manner. *See Bollinger v. State*, 111 Nev. 1110, 1115, 901 P.2d 671, 674, 676 (1995) (stating that the court does not reverse for an erroneous jury instruction unless "a reasonable likelihood [exists] that the jury . . . appl[ied]" the instruction in an unconstitutional manner (quoting *Victor v. Nebraska*, 511 U.S. 1, 6, (1994))). Accordingly, the district court did not abuse its discretion in giving the reasonable-doubt and equal-and-exact-justice instructions.[3]

*Charges instruction*

The charges instruction listed the six counts brought by the State, and told the jury, in relevant part, that "[i]t is the duty of the jury to apply the rules of law contained in these instructions to the facts of the case and determine whether or not the Defendant is guilty of one or more of the offenses charged." Boyd alleges that the quoted language "minimized the State's burden of proof" and "misstate[d]" the jury's role because it failed to focus on the jury's duty to determine whether the State met its burden to prove guilt beyond a reasonable doubt.

While we have not specifically addressed the validity of an instruction's emphasis on the jury's role to determine guilt, as opposed to the jury's role to decide whether the State proved guilt beyond a reasonable doubt, we have concluded in a different context that no error occurred where the district court instructed the jury "to determine the guilt or innocence of the defendant," not the culpability of anyone else. *Cf. Guy v. State*, 108 Nev.

---

[3]While Boyd acknowledges this precedent, he invites us to revisit it. We decline to do so as he cites no authority or justification to reconsider our precedent. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (declining to address arguments where a party failed "to present relevant authority and cogent argument").

770, 778, 839 P.2d 578, 583 (1992). Additionally, we have rejected challenges to jury instructions on analogous grounds where the district court otherwise properly instructed the jury on the principles of burden of proof and presumption of innocence. *E.g.*, *Johnson*, 118 Nev. at 806, 59 P.3d at 462 (rejecting argument that the reasonable-doubt instruction minimized the burden of proof, and noting the other instructions "on the presumption of innocence and the State's burden of proof").

The charges instruction accurately stated the jury's role, despite that it did not also state that guilt requires the State to offer proof beyond a reasonable doubt. Also, the district court provided two separate instructions, one on Boyd's presumption of innocence, and the other on the State's burden. Accordingly, the district court did not abuse its discretion in including the objected-to language in the charges instruction.

*Specific-intent instruction*

Boyd objected to the specific-intent instruction on the first-degree kidnapping charge, arguing that it gave a "vague" definition of specific intent and failed to tell the jury that Boyd needed to "knowingly detain[ ] [B.W.] with the" "specific intent to hold or detain B.W. for the purpose of committing extortion." He also argues that the instruction permitted the jury to determine guilt based on any purpose for which Boyd held B.W. so long as the evidence supported it, despite that the State's amended information listed only extortion as the purpose for which Boyd held B.W. Boyd contends that his proposed language would have corrected the alleged errors: "To establish specific intent, the State must prove, beyond a reasonable doubt, that Mr. Boyd knowingly detained [B.W.] with the intent to commit extortion and purposely intended to kidnap her."

A conviction for kidnapping stands if either (1) the defendant "willfully seizes, confines, inveigles, entices, decoys, abducts, conceals,

SUPREME COURT
OF
NEVADA

(O) 1947A

kidnaps or carries away a person by any means whatsoever with the intent to hold or detain" the person for the purpose of committing extortion; or (2) the defendant "holds or detains" a person for the purpose of committing extortion. NRS 200.310(1). Thus, subsection (1) of NRS 200.310 contains two specific-intent elements: (1) the specific intent to hold or detain another, along with (2) the specific "intent to commit [the] predicate offense" of extortion. *Lofthouse v. State*, 136 Nev. 378, 380-81, 467 P.3d 609, 612 (2020) (observing that first-degree kidnapping requires the intent to commit the predicate offense and analyzing what constitutes an "unlawful act" under the list of predicate offenses).

We conclude that the specific-intent instruction given, particularly viewed in context with the other instructions on first-degree kidnapping, was not erroneous. First, the specific-intent instruction provided that the State must prove that Boyd "knowingly" committed the kidnapping, and Boyd "specifically intended to commit extortion." Thus, the instruction informs the jury that an intent to commit the act, i.e., an intent to hold or detain B.W., does not suffice to establish first-degree kidnapping. The jury also needed to find that Boyd acted with the additional intent to commit extortion. Thus, the instruction accurately stated the requirement that an actor possess the specific intent to commit the predicate offense of extortion to commit first-degree kidnapping. Second, contrary to Boyd's argument, the specific-intent instruction did not invite the jury to convict based on other purposes not alleged in the charging document. It simply informed the jury of its role to decide what purpose Boyd harbored when he intended to hold B.W. *See Ford*, 127 Nev. at 621, 262 P.3d at 1132 (stating that the jury decides "whether the defendant harbored the prohibited intent").

Additionally, Boyd's objection to the specific-intent instruction attempts to isolate that instruction from the other instructions on first-degree kidnapping. One of two preceding instructions stated, consistent with NRS 200.310(1), that a person must "willfully" seize, confine, inveigle, entice, etc., with the intent to hold or detain, for the purpose of committing extortion. The other preceding instruction stated that Boyd did not need to commit the predicate offense of extortion, but rather needed to possess the purpose to commit the predicate offense of extortion, to establish first-degree kidnapping. When viewed in light of these instructions on first-degree kidnapping, the specific-intent instruction does not lead the jury to return a guilty verdict on first-degree kidnapping absent a finding that Boyd possessed the requisite specific intent. *See Greene v. State*, 113 Nev. 157, 167-68, 931 P.2d 54, 61 (1997) ("Jury instructions relating to intent must be read together, not disconnectedly, and a single instruction to the jury may not be judged in isolation, but must be viewed in context of the overall charge."), *receded from on other grounds by Byford v. State*, 116 Nev. 215, 235, 994 P.2d 700, 713 (2000); *see also Leonard v. State*, 117 Nev. 53, 66, 17 P.3d 397, 405 (2001) ("A jury is presumed to follow [all] its instructions." (quoting *Weeks v. Angelone*, 528 U.S. 225, 234 (2000))). Accordingly, the district court's instruction on specific-intent was not erroneous.

*Proposed jury instructions*

Boyd challenges the district court's rejection of his proposed instructions on (1) corroboration, (2) circumstantial evidence, and (3) evidence collection on the basis that these instructions supported his theory of defense. A district court is not required to give an instruction "substantially covered by other instructions." *Davis v. State*, 130 Nev. 136, 145, 321 P.3d 867, 874 (2014) (internal quotation marks omitted) (quoting

Supreme Court
of
Nevada

(O) 1947A

10

*Runion v. State*, 116 Nev. 1041, 1050, 13 P.3d 52, 58 (2000)). However, it abuses its discretion when it makes an "arbitrary or capricious" decision or "exceeds the bounds of law or reason." *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001); *see also Rose v. State*, 127 Nev. 494, 500, 255 P.3d 291, 295 (2011) (reviewing refusal to give a proposed jury instruction for an abuse of discretion). Although the district court is required to give the accused's jury instruction on his or her "theory of the case as disclosed by the evidence," regardless of its strength, *Crawford v. State*, 121 Nev. 744, 751, 121 P.3d 582, 586 (2005) (internal quotation marks omitted) (quoting *Vallery v. State*, 118 Nev. 357, 372, 46 P.3d 66, 76-77 (2002)), it is not obligated to "accept misleading, inaccurate or duplicitous jury instructions," *Carter v. State*, 121 Nev. 759, 765, 121 P.3d 592, 596 (2005).

*Corroboration instruction*

The corroboration instruction provided that a victim's testimony does not need corroboration to sustain a conviction if the jury believes it beyond a reasonable doubt. Boyd contends that the proposed language, "This does not require you to give the alleged victim's testimony any greater weight . . . . You may still consider the lack of corroborating evidence in determining whether the State has met its burden," was essential to his defense, and thus, the court was required to include it.

"This court has repeatedly stated that the uncorroborated testimony of a victim, without more, is sufficient to uphold" sex-offense related convictions. *Gaxiola v. State*, 121 Nev. 638, 648, 119 P.3d 1225, 1232 (2005). Accordingly, we have approved an instruction similar to the challenged instruction here because it corrects the mistaken belief by juries that "one witness's testimony" does not suffice to establish guilt. *Id.* at 650, 119 P.3d at 1233. Thus, the challenged instruction provided a correct statement of the law. Additionally, the instruction cautioned the jury to

rely on the testimony as sufficient for a conviction only insofar as it believed the testimony beyond a reasonable doubt, thus permitting the jury to reject the testimony as insufficient by itself for a verdict. Also, the witness-credibility instruction addressed, to some extent, the concern Boyd raised, that the jury can consider lack of corroboration and other external factors of a witness's testimony to determine whether the State met its burden. *See Tanksley v. State*, 113 Nev. 844, 849, 944 P.2d 240, 243 (1997) (providing that jury instructions must be "taken as a whole"). Thus, the district court did not abuse its discretion in refusing to include Boyd's proposed language because the given instruction reflected an accurate statement of the law, and the jury received an instruction on witness credibility that accounted for Boyd's concerns.

*Circumstantial-evidence instructions*

Boyd requested an instruction that told the jury to base its verdict on circumstantial evidence only to the extent that such evidence confirmed the theory of the defendant's guilt and was irreconcilable with any other rational conclusions. The proposed instruction also told the jury to adopt a specific inference of innocence in the event the circumstantial evidence yielded two competing, reasonable interpretations. Boyd also requested another similar instruction that reminded the jury to adopt a specific inference of innocence in the face of two opposing, but reasonable, conclusions. He argues that the district court's refusal to give the instructions was an abuse of discretion.

While it would not have been error to provide Boyd's proposed instructions, it also was not error to refuse to provide them. *Bails v. State*, 92 Nev. 95, 97, 545 P.2d 1155, 1156 (1976). Even when "all of the evidence is circumstantial," we have instead focused on whether the jury received an accurate instruction on reasonable doubt. *Id.* at 97-98, 545 P.2d at 1156.

Also, we have observed the potential for such instructions on circumstantial evidence to confuse the jury regarding its role to determine the facts from the evidence. *Id.* at 97, 545 P.2d at 1156. Here, we perceive no abuse of discretion in refusing to give the proposed instructions, given that the jury received a proper instruction on reasonable doubt, and the district court rejected the proposed instructions based on their potential to confuse the jury.

### *Evidence-collection instructions*

Boyd contends that the district court improperly refused to instruct the jury that the State's failure to extract the complete contents of B.W.'s phone established an "irrebuttabl[e]" presumption that B.W. "knowing[ly] and voluntary[ily]" participated in the alleged acts and that the jury "may consider" the State's failure as evidence that B.W. "knowingly and consen[sually]" acted. He argues that B.W.'s phone "would have depicted" a consensual relationship, and thus, its contents were material. He also argues that the State's "choice to not download B.W.'s phone information" constituted gross negligence.

When, as here, the State allegedly fails to "gather evidence," we apply a two-part test. *See Daniels v. State*, 114 Nev. 261, 267-68, 956 P.2d 111, 115 (1998). The first part of the test "requires the defense to show that the evidence was 'material,'" or in other words, created "a reasonable probability that, had the evidence been available to the defense, the result of the proceedings would have been different." *Id.* at 267, 956 P.2d at 115. If the evidence satisfies materiality, then the second part of the test looks at "whether the failure to gather evidence was the result of mere negligence, gross negligence, or a bad faith attempt to prejudice the defendant's case." *Id.* A negligent failure to gather evidence allows the defendant to "examine" witnesses about "the investigative deficiencies." *Id.* By contrast, gross

negligence "entitle[s]" the defendant to an instruction that presumes "the evidence would have been unfavorable to the State." *Id.* Finally, the State's bad faith may warrant a "dismissal of the charges." *Id.*

Boyd's argument for materiality is that B.W.'s phone contained photos of the two of them, which supported his theory of a consensual relationship. Testimony by both Boyd and B.W. already supported the claim that they took photos together, and that those photos depicted a consensual relationship. *See Belcher v. State*, 136 Nev. 261, 272-73, 464 P.3d 1013, 1027 (2020) (concluding that text-message evidence of a dispute between the defendant and another witness was not material where a witness's testimony had already described the dispute for the jury). While photos here may have showed expressions and provided visuals for how Boyd and B.W. interacted to corroborate what a jury might have perceived as self-interested or incredible testimony from Boyd, he did not describe how many photos existed or what the photos depicted beyond generalities. Additionally, the jury's rejection of Boyd's substantial evidence of the consensual relationship makes it unlikely that the photos would have yielded a different result. Thus, the district court properly determined that the photos were not material.

Even if Boyd proved materiality, he did not prove gross negligence. Boyd contends that the State's culpability is evident because the contents of B.W.'s phone rebutted the essence of the charges that she did not voluntarily engage in prostitution. B.W. told police that she never sent Boyd photos, but that Boyd took photos of her, and that she only communicated with Boyd via WhatsApp. She also said that she deleted WhatsApp from her phone sometime after leaving Boyd, which created practical difficulties for the State to extract the deleted data from her phone.

B.W.'s assertions to police thus gave investigators reason to believe that Boyd's phone, not B.W.'s phone, contained the probative information. Thus, B.W.'s phone did not "so obvious[ly]" contain exculpatory evidence, particularly in the form of photos, such that the failure to collect the photo evidence amounted to gross negligence. *Cf. Randolph v. State*, 117 Nev. 970, 988, 36 P.3d 424, 435 (2001) (concluding "that the potential evidentiary significance of" blood evidence "was [not] so obvious" as to constitute gross negligence by investigators' failure "to impound and test" it). We have also said that the selective collection of evidence does not prove even negligence, much less gross negligence. *See Johnson v. State*, 117 Nev. 153, 167-68, 17 P.3d 1008, 1018 (2001). Boyd also failed to show that it was possible for police to collect the data given the limitations of extraction tools. *Randolph*, 117 Nev. at 988, 36 P.3d at 435. Because Boyd failed to show materiality and gross negligence, we conclude that the district court did not abuse its discretion in refusing to give the evidence-collection instructions.

*Sufficiency of the evidence*

Boyd argues that B.W.'s testimony demonstrates that she moved freely during the four-month period the State alleged the kidnapping occurred such that the evidence does not support his first-degree kidnapping conviction.[4] He contends that the State failed to offer sufficient evidence to prove that any kidnapping was not incidental to any extortion because "[n]one of the facts" relied on by the State to establish first-degree kidnapping "go beyond what is required to prove [the predicate offense of]

---

[4]The second amended information alleged that Boyd committed the kidnapping "on or between April 1, 2019 and July 27, 2019." At trial, the State conceded that "on occasion," B.W. was permitted to see her family, but it argued that during the four-month period, "she was never free to go where she wanted to. And when she left, she had to come right back to him."

SUPREME COURT
OF
NEVADA

(O) 1947A

15

extortion." He also asserts that B.W.'s testimony that "she freely traveled" shows that "any potential movement or restraint" on Boyd's part did not increase her risk of harm or substantially exceed any risk of danger found in extortion.

We affirm a jury's verdict where "substantial evidence," viewed "in the light most favorable to the prosecution," exists for "any rational trier of fact [to find] . . . the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (emphasis and internal quotation marks omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under NRS 200.310(1), "[a] person who willfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away a person by any means whatsoever with the intent to hold or detain, or who holds or detains, the person for . . . the purpose of committing . . . extortion . . . upon or from the person" commits first-degree kidnapping.[5] "The statute is broad in its sweep," *Wright v. State*, 94 Nev. 415, 417, 581 P.2d 442, 443 (1978), and it does not necessarily require restraint of, force against, or movement of the victim, *see, e.g., Bridges v. State*, 116 Nev. 752, 765, 6 P.3d 1000, 1009 (2000) (concluding that sufficient evidence for first-degree kidnapping existed where the defendant "used a ruse to lure" the victim "for the purpose of killing him"); *Hutchins v. State*, 110 Nev. 103, 108, 867 P.2d 1136, 1139-40 (1994) (concluding that "the plain language of NRS 200.310(1) does not require asportation"

---

[5]As relevant here, the predicate crime of extortion requires that the accused "with the intent to . . . gain any money or other property or . . . to do or abet or procure any illegal or wrongful act, whether or not the purpose is accomplished, threaten[ ] directly or indirectly" to (1) "injure a person or property"; (2) "expose or impute to any person any deformity or disgrace; or" (3) "expose any secret." NRS 205.320(2), (4), (5).

(quoting *Clem v. State*, 104 Nev. 351, 354, 760 P.2d 103, 105 (1988))), *holding modified on other grounds by Mendoza v. State*, 122 Nev. 267, 275-76, 130 P.3d 176, 181 (2006). Also, the statute does not provide any demarcation for the length or degree of detainment. *See* NRS 200.310(1). The crime is complete when the actor commits the actus reus with the requisite mental state, regardless of whether the victim thereafter leaves on his or her own volition. *See id.* Accordingly, perpetual restraint of the victim does not constitute a necessary condition to the charge of first-degree kidnapping.

NRS 200.310(1) can encompass conduct that also constitutes a separate offense depending on the circumstances. *Wright*, 94 Nev. at 417, 581 P.2d at 443 (explaining that "[l]iterally applied, [the statute] . . . encompass[es] . . . ordinary robbery," which carries a lighter sentence). Thus, when a defendant faces separate charges of kidnapping and an enumerated offense, as here, we require that the State rely on a movement not "incidental" to the underlying offense. *Id.* at 417-18, 581 P.2d at 443-44. A movement is not incidental where it (1) "serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense," (2) "substantially exceeds that required to complete the associated crime charged," or (3) "stands alone with independent significance from the underlying charge." *Mendoza*, 122 Nev. at 274-75, 130 P.3d at 180-81.

While B.W. testified that she left Boyd's presence on several occasions, mostly to visit her family, and thus, Boyd never physically restrained her, the evidence supports a theory that her movements did not reflect her free will because she felt compelled to return to Boyd out of fear for the harm that he would inflict on her and her family. B.W. testified that

Supreme Court
of
Nevada

(O) 1947A

17

Boyd became so angry when she told him that she did not want to be a prostitute that he threatened via text messages and videos to harm, and even kill, her and her family. After the first time Boyd arranged a prostitution "date," he grabbed her arm and told B.W. that she had no choice but to accompany a stranger to his room. Boyd also forced her to have sex on several occasions, including the morning after they met. He threatened to publish videos of them engaging in sex. He always maintained a close proximity to B.W. when she went on dates with the "tricks" or customers. We conclude that a reasonable jury could determine from this evidence that Boyd's threats and violence "kidnapped" B.W. and reflected his intent that she never leave and that he gain money from her prostitution acts.

Further, the kidnapping was not incidental to the extortion. While the State relies on the same threats to harm B.W. and expose the sex video to prove the kidnapping and extortion, some of Boyd's behavior exceeded what was necessary to commit extortion. The evidence showed that he tracked the whereabouts of B.W. through various applications. He sent angry messages to B.W. when she did not respond to him quickly enough. After she left him in Oakland, he threatened to shoot her and her mother. He sent videos of himself in the streets looking for her. Those actions exceed the crime of extortion through prostitution, as B.W. described that his behavior made her feel unable to leave Boyd and the forced prostitution situation. Based on these facts, a reasonable jury could conclude that the kidnapping was not incidental to the extortion. Thus, the

Supreme Court
of
Nevada

(0) 1947A

State presented sufficient evidence for the jury to convict Boyd of first-degree kidnapping.[6]

For the foregoing reasons, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon


cc:   Hon. Carolyn Ellsworth, District Judge
Law Office of Christopher R. Oram
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

---

[6]Boyd argues that "the numerous errors committed by the district court" require reversal. Because we conclude that the district court committed no errors, Boyd is not entitled to reversal based on cumulative error. *Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008).

SUPREME COURT
OF
NEVADA

(O) 1947A